UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

**MELANIE LYN CICHOCKI,**

                                 **Plaintiff,**                16-CV-0784Sr

v.

**CAROLYN W. COLVIN,**
**Commissioner of Social Security,**

                                 **Defendant.**

_____

## DECISION AND ORDER

As set forth In the Standing Order of the Court regarding Social Security Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have consented to the assignment of this case to the undersigned to conduct all proceedings in this case, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g). Dkt. #17.

## BACKGROUND

Plaintiff applied for disability insurance benefits and supplemental security income payments with the Social Security Administration ("SSA"), alleging disability beginning May 24, 2011 due to bipolar disorder, obesity, migraine headaches and a history of seizures. Dkt. #9, p.302. A hearing was held before Administrative Law Judge William M. Weir on February 8, 2013, at which plaintiff, represented by counsel, appeared and testified. Dkt. #9, pp.94-113 . The ALJ rendered a determination that

plaintiff was not disabled on June 24, 2013. Dkt. #9, pp.149-166.

On September 21, 2014, the Appeals Council remanded the case to the ALJ to obtain testimony from a vocational expert regarding the extent to which plaintiff's environmental limitations, *to wit*, inability to be exposed to chemical irritants that could trigger migraine headaches, impact her employment options. Dkt. #9, pp.166-173.

On January 26, 2015, plaintiff, represented by counsel, and an impartial vocational expert, Jay Steinbrenner, appeared and testified before the ALJ. Dkt. #9, pp.50-88. Plaintiff testified that she continued to receive treatment for migraines, noting that although she had seen an improvement in the frequency of her migraines, she continued to have migraines twice a week, lasting 2-3 hours. Dkt. #9, p.67. She testified that she was not currently receiving Botox injections because her migraines had decreased to twice per week. Dkt. #9, p.68. She testified that she had not experienced manic symptoms since November of 2014, but continued to experience depression.[1] Dkt. #9, p.69. Plaintiff testified that she changed her long-term therapist in February of 2014 with the hope that a new provider might help her move forward given her feelings of being stuck and depressed for several years. Dkt. #9, p.69.

Plaintiff testified that beginning November 3rd, she was babysitting her eighteen month old nephew two days a week for eight hours and her six year old niece

---

[1] A psychiatric evaluation dated December 22, 2014 by DENT Neurological Institution indicated a depression screening result of moderately severe depression Dkt. #9, p.684. In February 16, 2015, the depression screen results indicated severe depression, causing her provider to increase her medication beyond the recommended daily dose. Dkt. #9, p.688 & 690.

after school. Dkt. #9, pp.60-61. She further testified that she actually only ends up babysitting one day a week due to her depression and feelings of being overwhelmed. Dkt. #9, p.62. She later testified that she watched the children eight hours a day, five days a week, but needed to call her mother for assistance approximately 10 days per month. Dkt. #9, pp. 80-81. She also described how she would put her nephew in his high chair and give him snacks or lie down when he napped if she needed to calm down due to anxiety. Dkt. #9, p.74.

When asked to assume, *inter alia*, that plaintiff could perform unskilled work at a light exertional level, the vocational expert opined that plaintiff could not perform her past relevant work as a home healthcare aide, but could perform housekeeping work or work as a mail room clerk. Dkt. #9, pp.85-86. When asked about the interruption from plaintiff's migraines, the vocational expert testified that an inability to work 2-3 hours at a time, two times a week, would be problematic. Dkt. #9, pp.87-88.

The ALJ rendered a determination that plaintiff was not disabled on May 15, 2015. Dkt. #9, pp.22-38. The Appeals Council denied plaintiff's request for review on August 3, 2016. Dkt. #9, p.6. Plaintiff commenced this action seeking review of the Commissioner's final decision on September 29, 2016. Dkt. #1.

**DISCUSSION AND ANALYSIS**

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in

the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 404.1505(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 404.1520(a). At step one, the claimant must demonstrate that he is not engaging in substantial gainful activity. 20 C.F.R. § 404.1520(b). At step two, the claimant must demonstrate that he has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 404.1520(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to

disability benefits. 20 C.F.R. § 404.1520(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient residual functional capacity ("RFC"), for the claimant to return to past relevant work. 20 C.F.R. § 404.1520(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education and work experience. 20 C.F.R. § 404.1520(g).

In the instant case, the ALJ made the following findings with regard to the five-step sequential evaluation: (1) plaintiff had not engaged in substantial gainful activity since the alleged onset date of May 24, 2011; (2) plaintiff's bipolar disorder, obesity and migraine headaches constituted severe impairments; (3) plaintiff's impairments did not meet or equal any listed impairment; (4) plaintiff retained the capacity to perform unskilled work with no more than occasional contact with coworkers, supervisors and the public and could lift and carry 20 pounds, walk ½ mile at a time, sit for 2 hours at a time with normal breaks and stand for 2 hours at a time with normal breaks but was unable to perform her past relevant work as a nurse's aide; and (5) plaintiff could work as a cleaner (housekeeping) or mail room clerk and was not, therefore, disabled within the meaning of the SSA. Dkt. #5, pp.23-27.

Plaintiff argues that the ALJ failed to properly evaluate plaintiff's migraines. Dkt. #13-1, p.18.

The Commissioner argues that the ALJ thoroughly considered plaintiff's complaints and treatment records pertaining to migraine headaches in assessing plaintiff's RFC. Dkt. #15-1, p.22.

In his decision, the ALJ determined that plaintiff's migraine headaches constituted a severe impairment. Dkt. #9, p.25. However, the ALJ determined that plaintiff's migraine headaches, "have improved significantly with treatment, such that the claimant could perform the physical demands of the RFC stated in this decision." Dkt. #9, p.35. In reaching this determination, the ALJ noted the absence of complaints regarding migraines in plaintiff's primary care records and plaintiff's report that her headaches responded well to medication and Botox injections and had significantly improved in terms of both frequency and severity. Dkt. #9, pp.36-38. The ALJ noted the vocational expert's testimony that migraine headache symptoms would be problematic if they occurred on a regular basis, but found that the medical evidence did not support frequent and lengthy occurrences of migraine headaches, given that plaintiff currently babysits five days a week for eight hours a day. Dkt. #9, p.42. As a result, the ALJ did not include limitations resulting from migraine headaches in his assessment of plaintiff's RFC. Dkt. #9, p.42.

The ALJ's failure to include limitations resulting from plaintiff's migraine headaches in his assessment of plaintiff's RFC constitutes legal error and is not supported by substantial evidence in the record. Plaintiff's medical records from the DENT Headache & Neuro-Oncology Center, where she sought treatment for her

headaches, are consistent with her testimony that the frequency of her migraines had diminished - from 15-24 per month in November of 2011 to 10-12 per month in July of 2012, and 2-3 per month (8 total), between August and October of 2012, but then increased in frequency in April of 2013, when plaintiff extended the interval between Botox injections, so that between July and December of 2013, plaintiff reported about 2 migraines per week or 8-10 per month, which plaintiff reported as a 50% improvement. Dkt. #9, pp.490, 559, 563, 566, 570, 574, 598, 602, 615, 625. Regardless of this decrease in frequency, 2-3 migraines per week remains significant. As the vocational expert testified, an inability to work 2-3 hours at a time, two times a week, would impact plaintiff's ability to engage in substantial gainful employment. Dkt. #9, pp.87-88.

Providing childcare to her brother's children does not negate the potential functional limitations that migraines may impose upon plaintiff's ability to engage in substantial gainful activity. Plaintiff testified that her mother was available to assist her with the children when necessary and that she would sometimes lie down when the baby napped or place him in a high chair with snacks when she needed a respite. As a result, this matter is remanded for consideration of the effect of plaintiff's migraines upon her RFC. *See Makelke v. Comm'r of Soc. Sec.*, No. 16-CV-977, 2018 WL 4103179, at * (W.D.N.Y. Aug. 29, 2018) (having determined that plaintiff's migraine condition was a severe impairment at step 2, the ALJ was required to consider the condition's impact on plaintiff's RFC); *Johnson v. Comm'r of Soc. Sec.*, No. 13-cv-217, 2014 WL 2118444, at *5 (D. Vt. May 21, 2014) (remand required to account for functional limitations arising from migraines because determination that migraines

constituted a severe impairment implies that such impairment significantly limits an individual's ability to perform basic work-related activities); *Randel v. Colvin,* No. 14-CV-1449, 2016 WL 1223363, at *24 (N.D.N.Y. Mar. 4, 2016) (remanding because the ALJ did not address the fact that, although medications appear to reduce plaintiff's pain from migraines, they do not appear to eliminate her migraines), *adopted by* 2016 WL 1248240 (Mar. 28, 2016); *Ebert v. Astrue*, No. 07-CV-1166, 2009 WL 3764219, at (N.D.N.Y. Nov. 10, 2009) (remanding where ALJ failed to consider the impact of plaintiff's headaches upon her RFC despite vocational expert's acknowledgment that migraines affecting plaintiff's ability to work could create concern for an employer).

## CONCLUSION

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Dkt. #13), is granted, and the Commissioner's motion for judgment on the pleadings (Dkt. #15), is denied. This matter is remanded to the Commission for further proceedings consistent with this decision.

**SO ORDERED.**

**DATED:**     **Buffalo, New York**
              **December 10, 2018**

                                      *s/ H. Kenneth Schroeder, Jr.*
                                      **H. KENNETH SCHROEDER, JR.**
                                      **United States Magistrate Judge**